CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
708 Third Avenue – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | | |
|---|---|---|
| MANUEL CHIQUI, RAUL TOLENTINO, ENRIQUE TOLENTINO, and ANDRES PEREZ, on behalf of themselves and others similarly situated, | : : : : | Case No. 18 CV 6777 |
| Plaintiffs, | : : | FLSA COLLECTIVE |
| -against- | : : : | ACTION and RULE 23 CLASS ACTION |
| SEERSUCKER, INC., WILMA JEAN INC., SMITH CANTEEN, INC., ROBERT NEWTON, and KERRY DIAMOND, | : : : : | COMPLAINT **Jury Trial Demanded** |
| Defendants. | : : | |

-------------------------------------------------------------------X

Plaintiffs MANUEL CHIQUI, RAUL TOLENTINO, ENRIQUE TOLENTINO, and ANDRES PEREZ (hereinafter, "Plaintiffs"), on behalf of themselves and other similarly situated employees, by and through their undersigned attorneys, Cilenti & Cooper, PLLC, file this Complaint against defendants SEERSUCKER, INC., WILMA JEAN INC., SMITH CANTEEN, INC. (collectively, the "Corporate Defendants" or the "Restaurants"), ROBERT NEWTON, and KERRY DIAMOND (collectively, the "Individual Defendants") (the Corporate Defendants and the Individual Defendants are collectively referred to as the "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid overtime compensation, (b) unpaid "spread of hour" premiums for each day that their shift exceeded ten (10) hours, (c) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiffs are each residents of Kings County, New York.

6.      Defendant, SEERSUCKER, INC., is a domestic business corporation organized under the laws of the State of New York, which had a principal place of business at 329 Smith Street, Brooklyn, New York 11231.

7.      From in or about 2009 until in or about early 2014, Defendant SEERSUCKER, INC. owned and operated a restaurant doing business at "Seersucker" located at 329 Smith Street, Brooklyn, New York.

8.      Upon information and belief, sometime in or about 2012 Defendant SEERSUCKER, INC. owned and operated a second restaurant called "Nightingale 9" at 345 Smith Street, Brooklyn, New York.

9.      Upon information and belief, in or about early 2014 Defendant SEERSUCKER, INC. changed the name of the restaurant doing business at 329 Smith Street from "Seersucker" to "Nightingale 9."

10.     Defendant SEERSUCKER, INC. owned and operated the restaurant doing business as "Nightingale 9" at 329 Smith Street until in or about July 2018, at which time Defendants ceased operations of the restaurant at that location.

11.     Defendant, WILMA JEAN INC., is a domestic business corporation organized under the laws of the State of New York, which had a principal place of business at 345 Smith Street, Brooklyn, New York 11231.

12.     From sometime in or about 2012 until in or about March 2018, Defendant WILMA JEAN INC. owned and operated a restaurant doing business at "Wilma Jean" located at 345 Smith Street, Brooklyn, New York, at which time Defendants ceased operations of the restaurant at that location.

13.     Defendant, SMITH CANTEEN, INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 343 Smith Street, Brooklyn, New York 11231.

14.     Since in or about June 2011, Defendant, SMITH CANTEEN, INC., has owned and operated a restaurant doing business as "Smith Canteen" located at 343 Smith Street, Brooklyn, New York.

15.     Defendant, ROBERT NEWTON, is an officer, owner, shareholder, director, supervisor, managing agent, and proprietor of each of the Corporate Defendants, who actively participated in the day-to-day operations of the Restaurants and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

16.     Defendant, KERRY DIAMOND, is an officer, owner, shareholder, director, supervisor, managing agent, and proprietor of SMITH CANTEEN, INC., who actively participates in the day-to-day operations of the "Smith Canteen" and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with the SMITH CANTEEN, INC.

17.     The Individual Defendants exercise control over the terms and conditions of their employees' employment in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) create and maintain employment records.

18.    During the relevant period alleged herein, the Individual Defendants were present on the premises of the Restaurants on a daily basis, actively supervised the work of the employees, and mandated that all issues concerning the employees' employment – including hours worked and pay received – be authorized and approved by them.

19.    Upon information and belief, at least within each of the three (3) most recent years relevant to the allegations contained herein, each of the Corporate Defendants were, and continue to be, "enterprises engaged in commerce" within the meaning of the FLSA in that they (i) have and have had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) have and have had an annual gross volume of sales of not less than $500,000.

20.    Defendants employed Plaintiff, MANUEL CHIQUI, from in or about August 2011 until in or about July 2018 to work as a non-exempt food preparer/kitchen helper for each of Defendants' Restaurants known as "Seersucker," "Wilma Jean," and "Nightingale 9."

21.    Defendants employed Plaintiff, RAUL TOLENTINO, from in or about 2010 until in or about July 2018 to work as a non-exempt salad preparer and cook for each of Defendants' Restaurants known as "Seersucker," "Wilma Jean," and "Nightingale 9."

22.    Defendants employed Plaintiff, ENRIQUE TOLENTINO, from on or about September 30, 2013 until in or about July 2018 to work as a non-exempt salad preparer, dishwasher, cook, and baker for each of Defendants' Restaurants known as "Seersucker," "Wilma Jean," "Nightingale 9," and "Smith Canteen."

23.     Defendants employed Plaintiff, ANDRES PEREZ, from on or about December 20, 2011 until on or about July 4, 2018 to work as a non-exempt cook for each of Defendants' Restaurants known as "Seersucker," "Wilma Jean," and "Nightingale 9."

24.     The work performed by Plaintiffs was and is directly essential to the businesses operated by Defendants.

25.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

26.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned "spread of hour" premiums in direct contravention of the New York Labor Law.

27.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

28.     The Individual Defendants actively participated in the day-to-day operation of the Restaurants.    For instance, the Individual Defendants personally supervised and directed the work of the employees, instructed the employees how to perform their jobs, and corrected the employees for errors made.

29.     The Individual Defendants created and implemented all crucial business policies, and made decisions concerning the number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees were to be paid.

30.    The Corporate Defendants are associated as a single enterprise, utilizing Plaintiffs and other similarly situated employees in a fungible and interchangeable manner as workers in the businesses operated by the Defendants.

31.    The Corporate Defendants each engaged in related activities, namely, providing restaurant services to the general public for profit. The Corporate Defendants shared Plaintiffs and other similarly situated employees, acted in the interest of each other with respect to employees, paid their employees by the same plan or scheme, and were under common control.

32.    The Corporate Defendants were controlled by the same owner or owner group, operating as a unified operation and, upon information and belief, each provided mutually supportive services to the substantial advantage of the other such that each entity was operationally interdependent of each other and, therefore, may be treated as a single enterprise.

33.    In or about August 2011, Defendants hired Plaintiff, MANUEL CHIQUI, to work as a non-exempt food preparer/kitchen helper at Defendants' restaurant known as "Seersucker."

34.    Neither at the time of his hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate of pay and his corresponding overtime rate of pay.

35.    In or about June 2015, Defendants transferred Plaintiff to work in the same capacity at their restaurant known as "Wilma Jean."

36.    In or about March 2018, Defendants transferred Plaintiff to work in the same capacity at their restaurant known as "Nightingale 9."

37.     Plaintiff continued to work in that capacity at Nightingale 9 until his employment for Defendants came to an end in or about July 2018.

38.     From the beginning of the relevant six (6) year limitations period in November 2012 and continuing through in or about May 2017, Plaintiff worked six (6) days per week, and his work scheduled consisted of nine (9) hours per day Tuesday through Sunday from 9:00 a.m. until 6:00 p.m.

39.     From the beginning of the relevant six (6) year limitations period in November 2012 and continuing through in or about December 2012, while working at "Seersucker," Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $500 per week straight time for all hours worked, and worked fifty-four (54) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

40.     Beginning in or about January 2013 and continuing through in or about May 2015, while working at "Seersucker," Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $705 per week straight time for all hours worked, and worked fifty-four (54) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

41.     Beginning in or about June 2015 and continuing through in or about May 2017, while working at "Wilma Jean," Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $825 per week straight time for all hours worked, and worked fifty-four (54) hours per week. Work performed

8

above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

42.    Beginning in or about June 2017 and continuing through the remainder of his employment in or about July 2018 (while working at "Wilma Jean" and subsequently "Nightingale 9"), Defendants paid Plaintiff at the rate of $14 per hour for all hours up to forty (40) each week, and $21 per hour for all hours worked in excess of forty (40) each week. Thus, Plaintiff makes not claim for unpaid wages during this period.

43.    Upon paying Plaintiff his cash wages, Defendants failed to provide Plaintiff with written a wage statement during each pay period, which set forth his gross wages, deductions, and net wages.

44.    In or about 2010, Defendants hired Plaintiff, RAUL TOLENTINO, to work as a non-exempt salad preparer for Defendants' restaurant known as "Seersucker."

45.    Neither at the time of his hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate of pay and his corresponding overtime rate of pay.

46.    Sometime in or about 2012, Defendants promoted Plaintiff to the position of cook.

47.    In or about June 2015, Defendants transferred Plaintiff to work in the same capacity at their restaurant known as "Wilma Jean."

48.    In or about January 2018, Defendants transferred Plaintiff to work in the same capacity at their restaurant known as "Nightingale 9."

49.    Plaintiff continued to work in that capacity at Nightingale 9 until his employment for Defendants came to an end in or about July 2018.

50.     From the beginning of the relevant six (6) year limitations period in November 2012 and continuing through in or about May 2015, while working at "Seersucker," Plaintiff worked six (6) days per week, and his work scheduled consisted of ten and one-half (10½) hours per day Tuesday through Saturday from 1:00 p.m. until 11:30 p.m.; and eight (8) hours on Sunday from 9:00 a.m. until 5:00 p.m.

51.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $700 per week straight time for all hours worked, and worked sixty and one-half (60½) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

52.     Beginning in or about June 2015 and continuing through in or about December 2017, while working at "Wilma Jean," Plaintiff worked six (6) days per week, and his work scheduled consisted of eleven (11) hours per day Tuesday through Friday from 12:00 p.m. until 11:00 p.m.; and twelve (12) hours per day on Saturday and Sunday from 11:00 a.m. until 11:00 p.m.

53.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $900 per week straight time for all hours worked, and worked sixty-eight (68) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

54.     Beginning in or about January 2018 and continuing through the remainder of his employment in or about July 2018 (while working at "Nightingale 9"), Defendants paid Plaintiff at the rate of $14 per hour for all hours up to forty (40) each week, and $21

per hour for all hours worked in excess of forty (40) each week. Thus, Plaintiff makes not claim for unpaid wages during this period.

55.    Upon paying Plaintiff his cash wages, Defendants failed to provide Plaintiff with written a wage statement during each pay period, which set forth his gross wages, deductions, and net wages.

56.    On or about September 30, 2013, Defendants hired Plaintiff, ENRIQUE TOLENTINO, to work as a non-exempt dishwasher and salad preparer for Defendants' restaurant known as "Seersucker."

57.    Neither at the time of his hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate of pay and his corresponding overtime rate of pay.

58.    In or about May 2014, Defendants transferred Plaintiff to work as a salad preparer and, subsequently as a cook, at their restaurant known as "Nightingale 9."

59.    In or about March 2016, Defendants transferred Plaintiff to work as a cook and baker at their restaurant known as "Smith Canteen."

60.    In or about September 2016, Defendants transferred Plaintiff to work as a cook at their restaurant known as "Wilma Jean."

61.    In or about June 2017, Defendants transferred Plaintiff back to "Nightingale 9" to work as a cook.

62.    Plaintiff continued to work in that capacity at "Nightingale 9" until his employment for Defendants came to an end in or about July 2018.

63.    From the beginning of his employment on or about September 30, 2013 and continuing through in or about April 2014, while working at "Seersucker," Plaintiff

worked five (5) days per week, and his work scheduled consisted of nine and one-half (9½) hours per day Tuesday through Saturday from 3:00 p.m. until 12:30 a.m.

64.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $450 per week straight time for all hours worked, and worked forty-seven and one-half (47½) hours per week.   Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

65.    Beginning in or about May 2014 and continuing through in or about July 2014, while working at "Nightingale 9" as salad preparer, Plaintiff worked six (6) days per week, and his work scheduled consisted of nine (9) hours per day Tuesday through Sunday from 2:00 p.m. until 11:00 p.m.

66.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $450 per week straight time for all hours worked, and worked fifty-four (54) hours per week.   Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

67.    Beginning in or about August 2014 and continuing through in or about January 2015, while working at "Nightingale 9" as a cook, Plaintiff worked six (6) days per week, and his work scheduled consisted of nine (9) hours per day Tuesday through Sunday from 2:00 p.m. until 11:00 p.m.

68.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $600 per week straight time for all hours worked, and worked fifty-four (54) hours per week.   Work performed above forty

(40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

69.    Beginning in or about February 2015 and continuing through in or about February 2016, while working at "Nightingale 9" as a cook, Plaintiff worked six (6) days per week, and his work scheduled consisted of nine and one-half (9½) hours per day Tuesday through Sunday from 2:00 p.m. until 11:30 p.m.

70.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $800 per week straight time for all hours worked, and worked fifty-seven (57) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

71.    Beginning in or about March 2016 and continuing through in or about August 2016, while working at "Smith Canteen" as a cook and baker, Plaintiff worked six (6) days per week, and his work scheduled consisted of ten (10) hours per day Tuesday through Sunday from 7:00 a.m. until 5:00 p.m.

72.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $800 per week straight time for all hours worked, and worked sixty (60) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

73.    Beginning in or about September 2016 and continuing through in or about February 2017, while working at "Wilma Jean" as a cook, Plaintiff worked six (6) days

per week, and his work scheduled consisted of eleven (11) hours per day Tuesday through Sunday from 12:00 p.m. until 11:00 p.m.

74.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $900 per week straight time for all hours worked, and worked sixty-six (66) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

75.    Beginning in or about March 2017 and continuing through in or about May 2017, while working at "Wilma Jean" as a cook, Plaintiff worked six (6) days per week, and his work scheduled consisted of eleven (11) hours per day Tuesday through Sunday from 12:00 p.m. until 11:00 p.m.

76.    During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $980 per week straight time for all hours worked, and worked sixty-six (66) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

77.    Beginning in or about June 2017 and continuing through the remainder of his employment in or about July 2018, while working at "Nightingale 9" as a cook, Defendants paid Plaintiff at the rate of $14 per hour for all hours up to forty (40) each week, and $21 per hour for all hours worked in excess of forty (40) each week.  Thus, Plaintiff makes not claim for unpaid wages during this period.

78.     Upon paying Plaintiff his cash wages, Defendants failed to provide Plaintiff with written a wage statement during each pay period, which set forth his gross wages, deductions, and net wages.

79.     On or about December 20, 2011, Defendants hired Plaintiff, ANDRES PEREZ, to work as a non-exempt cook for Defendants' restaurant known as "Seersucker."

80.     Neither at the time of his hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate of pay and his corresponding overtime rate of pay.

81.     In or about June 2015, Defendants transferred Plaintiff to work in the same capacity at their restaurant known as "Wilma Jean."

82.     In or about June 2016, Defendants transferred Plaintiff to work in the same capacity at their restaurant known as "Nightingale 9."

83.     Plaintiff continued to work in that capacity at Nightingale 9 until his employment for Defendants came to an end in or about July 2018.

84.     From the beginning of the relevant six (6) year limitations period in November 2012 and continuing through in or about May 2014, while working at "Seersucker," Plaintiff worked six (6) days per week, and his work scheduled consisted of ten (10) hours per day Tuesday through Saturday from 2:00 p.m. until 12:00 a.m.; and ten (10) hours on Sunday from 8:00 a.m. until 6:00 p.m.

85.     During this period, there were many occasions when Plaintiff was required to work a double-shift on Saturdays from 8:00 a.m. until 12:00 a.m.

86.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $600 per week straight time for all hours worked, and worked sixty (60) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

87.     Beginning in or about June 2014 and continuing through in or about May 2015, while working at "Seersucker," Plaintiff worked six (6) days per week, and his work scheduled consisted of ten (10) hours per day Tuesday through Saturday from 2:00 p.m. until 12:00 a.m.; and ten (10) hours on Sunday from 8:00 a.m. until 6:00 p.m.

88.     During this period, there were many occasions when Plaintiff was required to work a double-shift on Saturdays from 8:00 a.m. until 12:00 a.m.

89.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $650 per week straight time for all hours worked, and worked sixty (60) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

90.     Beginning in or about June 2015 and continuing through in or about May 2016, while working at "Wilma Jean," Plaintiff worked six (6) days per week, and his work scheduled consisted of eleven (11) hours per day Tuesday through Sunday from 12:00 p.m. until 11:00 p.m.

91.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $800 per week straight time for all hours worked, and worked sixty-six (66) hours per week.  Work performed above forty

(40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

92.     Beginning in or about June 2016 and continuing through in or about December 2016, while working at "Nightingale 9," Plaintiff worked six (6) days per week, and his work scheduled consisted of ten and one-half (10½) hours per day Tuesday through Sunday from 1:00 p.m. until 11:30 p.m.

93.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $900 per week straight time for all hours worked, and worked sixty-three (63) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

94.     Beginning in or about January 2017 and continuing through in or about May 2017, while working at "Nightingale 9," Plaintiff worked six (6) days per week, and his work scheduled consisted of ten and one-half (10½) hours per day Tuesday through Sunday from 1:00 p.m. until 11:30 p.m.

95.     During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $1,000 per week straight time for all hours worked, and worked sixty-three (63) hours per week.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

96.     Beginning in or about June 2017 and continuing through the remainder of his employment in or about July 2018, Defendants paid Plaintiff at the rate of $14 per hour for all hours up to forty (40) each week, and $21 per hour for all hours worked in

excess of forty (40) each week.  Thus, Plaintiff makes not claim for unpaid wages during this period.

97.    Upon paying Plaintiff his cash wages, Defendants failed to provide Plaintiff with written a wage statement during each pay period, which set forth his gross wages, deductions, and net wages.

98.    Defendants knowingly and willfully operate their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

99.    Defendants knowingly and willfully operate their business with a policy of not paying Plaintiffs and other similarly situated employees "spread of hour" premiums for each day that their work shift exceeded ten (10) hours, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

100.    At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

101.    Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt employees who have been or were employed by Defendants since November 29, 2015 through the end of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who

were compensated at rates less than time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

102.    The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

103.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

104.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

105.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

106.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

a.    Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Collective Action Members;

c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

e.    Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f.    Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

107.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

108.    Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

110.    Plaintiffs bring their New York Labor Law claims on behalf of all persons who were employed by Defendants at any time since November 29, 2012 (the "Class Period") who were non-exempt employees within the meaning of the New York Labor Law and have not been paid statutory overtime compensation or "spread of hour" premiums in violation of the New York Labor Law (the "Class").

111.    Upon information and belief, the persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, the Class consists of all non-managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

112. The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

113. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

114. Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

115. Plaintiffs will fairly and adequately protect the interests of the NY Class members. Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class and Collective Action Members to represent their interests fairly and adequately, and that they must consider the interests of the Class and Collective Action Members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class or Collective Action Members.

116. Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class and Collective Action Members. Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and they understand that they may be called upon to testify in depositions and at trial.

117.    Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

118.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a.    Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;

    b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Class members;

    c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d.    Whether Defendants failed to pay Plaintiffs and the Class members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

    e.    Whether Defendants' violations of the New York Labor Law are willful as that terms is used within the context of the New York Labor Law; and,

    f.    Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

119.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "118" of this Complaint as if fully set forth herein.

120.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

121.    At all relevant times, Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

122.    Upon information and belief, during each of the three (3) most recent years relevant to the allegations herein, the Corporate Defendants each individually had gross revenues in excess of $500,000.

123.    Upon information and belief, during each of the three (3) most recent years relevant to the allegations herein, the Corporate Defendants jointly had gross revenues in excess of $500,000.

124.    Plaintiffs and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

125.    Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

126.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

127.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action Members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiffs and the Collective Action Members.

128.    As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

129.    Defendants failed to properly disclose or apprise Plaintiffs and the Collective Action Members of their rights under the FLSA.

130.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

131.    Due to the reckless, willful and unlawful acts of Defendants, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

132.    Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

133.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "132" of this Complaint as if fully set forth herein.

134.    Defendants employed Plaintiffs and the Class members within the meaning of New York Labor Law §§ 2 and 651.

135.    Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay them overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

136.    Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.  New York State Department of Labor Regulations § 146-1.6.

137.    Defendants knowingly and willfully violated the rights of Plaintiffs and the Class members by failing to pay "spread of hour" premiums to Plaintiffs and the Class members for each day their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations.

138.    Defendants failed to properly disclose or apprise Plaintiffs and the Class members of their rights under the New York Labor Law.

139.    Defendants failed to furnish Plaintiffs and the Class members with a statement with every payment of wages listing gross wages, deductions, and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

140.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

141.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

142.    Neither at the time of their hiring, nor anytime thereafter, did Defendants notify Plaintiffs and the Class members in writing of their regular and overtime rates of pay and their regularly designated payday, in contravention of New York Labor Law § 195(1).

143.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class members are entitled to recover from Defendants their unpaid overtime compensation, unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

144.    Plaintiffs and the Class members are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory and liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiffs MANUEL CHIQUI, RAUL TOLENTINO, ENRIQUE TOLENTINO, and ANDRES PEREZ, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully requests that this Court grant the following relief:

(a)    An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(b)    An award of unpaid "spread of hour" premiums due under the New York Labor Law;

(c)    An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(d)    An award of liquidated damages as a result of Defendants' failure to pay overtime compensation and "spread of hours" premium pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(e)    An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(f)    An award of prejudgment and post-judgment interest;

(g)    An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

28

(h)     Such other and further relief as this Court determines to be just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

trial by jury on all issues.

Dated: New York, New York
       November 29, 2018

                        Respectfully submitted,

                        CILENTI & COOPER, PLLC
                        *Attorneys for Plaintiffs*
                        708 Third Avenue – 6th Floor
                        New York, NY 10017
                        T. (212) 209-3933
                        F. (212) 209-7102

By:    _____
           Giustino (Justin) Cilenti (GC2321)